UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MICHAEL CHARLES FERGUSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 1:17cv237 |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) as provided for in the Social Security Act. 42 U.S.C. §416(I). Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The most recent favorable medical decision finding that the claimant was disabled

is the determination dated November 15, 2010. This is known as the "comparison point decision" or CPD.

2. At the time of the CPD, the claimant had the following medically determinable impairments: congenital heart anomaly (status post Tetralogy of Fallot repair and Blalock-Taussig shunts at age 3 and pulmonary artery stent placement in 2007). These impairments were found to medically equal section 4.06C (Ex. 1A, 8F) of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)).

3. Since the established onset date, the claimant has not engaged in substantial gainful activity (Ex. 2D, 3D, 6D, 7D)(20 CFR 404.1594(f)(1)).

4. Since April 11, 2014, the claimant has not had an impairment or combination of impairments which has met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

5. Medical improvement occurred as of April 11, 2014 (20 CFR 404.1594(b)(1)).

6. The medical improvement is related to the ability to work because, as of April 11, 2014, the claimant's CPD impairments no longer met or medically equaled the same listing that was equaled at the time of the CPD (20 CFR 404.1594(c)(3)(i)).

7. Since April 11, 2014, the claimant has had the following severe impairments: congenital heart disease (status post Tetralogy of Fallot repair at age 3, pulmonary artery stenting in 2007, and pulmonary valve replacement in 2011)(20 CFR 404.1594(f)(6)).

8. Based on the impairments present as of April 11, 2014, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) (lifting, carrying, pushing, and pulling 20 pounds occasionally and 10 pounds frequently and, in an eight-hour period, sitting or standing/walking for a total of 6 hours each) except that he is not able to climb ladders, ropes, or scaffolds at all and he can only occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. He must also avoid concentrated exposure to extreme heat, extreme cold, humidity, fumes, odors, dust, gases, poor ventilation, and other like respiratory irritants. He must avoid all exposure to unprotected and dangerous moving machinery.

9. As of April 11, 2014, the claimant was unable to perform past relevant work (20 CFR 404.1565).

10. On April 11, 2014, the claimant was a younger individual age 18-49 (20 CFR

| | |
|---|---|
| | 404.1563). |
| 11. | The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564). |
| 12. | Beginning on April 11, 2014, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). |
| 13. | Since April 11, 2014, considering the claimant's age, education, work experience, and residual functional capacity based on the impairments present as of April 11, 2014, the claimant is able to perform a significant number of jobs in the national economy (20 CFR 404.1560() and 404.1566). |
| 14. | The claimant's disability ended as of April 11, 2014 and he has not become disabled again since that date (20 CFR 404.1594(f)(8)). |

(Tr. 17- 40).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on December 11, 2017. On March 12, 2018, the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on April 2, 2018. Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be remanded.

A five-step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

In 2010, Plaintiff was experiencing shortness of breath, dizziness, and pre-syncope (Tr. 338). A MRI of the heart performed on September 27, 2010, revealed significant pulmonary regurgitation in the moderate range (Tr. 341). Plaintiff's ejection fraction was 45% (Tr. 341). On November 15, 2010, J. Sands, M.D., determined that Plaintiff's impairment equaled Listing 4.06 (Tr. 367). Based on the MRI and other diagnostic imaging, surgery was recommended. Plaintiff had pulmonary valve replacement surgery in January of 2011 (Tr. 55, 338).

Plaintiff "felt better after the surgery" (Tr. 369). On February 12, 2013, Plaintiff reported that he was feeling "pretty good," though he experienced fatigue and dizziness, especially with bending over (Tr. 369). He kept busy with housework and caring for his five children (Tr. 369). As a hobby, he enjoyed taxidermy (Tr. 369).

On March 25, 2014, an echocardiogram revealed normal chamber dimension; ejection fraction of 50% (at the "lower limits of normal"); normal valve morphology of mitral and aortic valve; normal functioning of the prosthetic pulmonary valve; and mild tricuspid regurgitation of no hemodynamic significance (Tr. 396).

On January 27, 2015, Plaintiff's treating cardiologist, William Kay, M.D., "reassured him that his structural congenital heart disease [was] currently stable. His pulmonary valve function [was] stable and he [did] not require a pulmonary valve replacement at [that] time" (Tr. 411). A follow-up was recommended in one year (Tr. 411). The following month, on February 5, 2015, Dr. Kay wrote a letter confirming Plaintiff's patient status (Tr. 409). The entirety of the body of the letter read as follows:

> This letter is in regards to [Plaintiff]. [Plaintiff] is currently being followed in my clinic for adult congenital heart disease. His current condition has kept him from being able to work, and he is on social security disability. He will likely be on disability for the remainder of his life. Please contact me if there are any further questions or concerns.

(Tr. 409). Then on November 4, 2015, Dr. Kay wrote another letter (Tr. 417). This letter documented Plaintiff's complaints of "near syncope" and passing out (Tr. 417). Plaintiff reported that he would experience "lightheadedness and/or hot flashes prior to episodes. He [felt] like frequent rest periods and light duty seem[ed] to keep the episodes at a lower occurrence" (Tr. 417). Dr. Kay then listed restrictions that Plaintiff had suggested for himself:

> For the above reasons, he feels it necessary to have the following restrictions in order to prevent/precipitate episodes:
> No twisting/turning movements
> May only perform light work
> Will need frequent rest periods
> Will need to take 1-2 naps daily while at work

(Tr. 417).

Plaintiff lives with his wife and five children (Tr. 39, 112). In 2015, the oldest of the children was eight years old (Tr. 112). Plaintiff is able to care for the younger children who are not yet in school (Tr. 42, 112, 218). He helps his children with homework and watches movies (Tr. 112). Plaintiff cooks and prepares meals (Tr. 42, 112, 219). Plaintiff's household chores

6

include leaf-raking, repairs, and yardwork (Tr. 219). In addition to taxidermy, Plaintiff's other hobby is hunting (Tr. 40, 59, 219, 369). During hunting season, he hunts four to five days a week (Tr. 242).

In support of remand, Plaintiff first argues that the ALJ erred at Step 2, and should have found that Plaintiff's condition equaled a listing. As the Commissioner notes, Plaintiff fails to develop any argument on this point, as he neither identifies the listed impairment he purports to equal, nor cites to medical evidence to support that his impairment equals the severity of a listed impairment. However, the only relevant listed impairment is Listing 4.06, Symptomatic congenital heart disease. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.06. The ALJ found at step two that Plaintiff did not meet or equal this or any listed impairment since April, 11, 2014 (Tr. 18). To support that his impairment equals the severity of (presumably) Listing 4.06, Plaintiff only vaguely refers to a MRI "showing the extent of the persistent heart problem" (Plaintiff's Brief at 12-13). Plaintiff does not cite to the MRI he references in his argument, but he presumably refers to the MRI of the heart performed on September 27, 2010 (Tr. 339-344). Plaintiff also refers to an opinion related to the MRI by John Brown, M.D. This is presumably Dr. Brown's letter from October 13, 2010 (Tr. 338).

The Commissioner notes that this MRI and the discussion of the MRI by Dr. Brown are not relevant to the contested period at issue in this appeal (Tr. 338-344). The point of comparison in Plaintiff's case was November 15, 2010 (Tr. 17, 399). This was "the most recent favorable medical decision that [Plaintiff] [was] disabled or continued to be disabled." 20 C.F.R. § 404.1594(b). On this date, Plaintiff equaled Listing 4.06 (Tr. 367). The MRI – dated September 27, 2010 – and the letter – dated October 13, 2010 – both constitute medical evidence from prior

7

to the point of comparison (Tr. 17-18, 367, 399). The ALJ's determination was that Plaintiff's disability ended over three years after the MRI was performed: "as of April 11, 2014" (Tr. 23). Therefore, Plaintiff here relies on medical evidence from an uncontested period. Plaintiff, in reply, states that there is no new MRI showing that he is <u>not</u> disabled. However, as discussed above, in March 2014 an echocardiogram revealed an essentially normally-functioning heart. And in January 2015, Plaintiff's cardiologist, Dr. Kay reassured Plaintiff that his structuarl congenital hart disease was stable. This court finds that the ALJ properly assessed Step 2.

Next, Plaintiff argues that the ALJ erred in discounting Dr. Kay's opinion that Plaintiff has episodes of near syncope that are consistent with an inability to hold down full-time employment. The ALJ discussed Plaintiff's treatment history with Dr. Kay, specifically Dr. Kay's treatment notes from January of 2015, showing that Plaintiff's structural congenital heart disease and pulmonary valve function were stable (Tr. 20, 411). On February 5, 2015, nine days after that office visit, Dr. Kay stated that Plaintiff was "currently being followed in my clinic for adult congenital heart disease. His current condition has kept him from being able to work, and he is on social security disability. He will likely be on disability for the remainder of his life" (Tr. 409). The ALJ assigned little weight to this opinion (Tr. 21). The ALJ explained that this was an issue reserved to the Commissioner (Tr. 21). 20 C.F.R. § 404.1527(d). An issue reserved to the Commissioner is not given "any special significance." 20 C.F.R. § 404.1527(d).

Similarly, the ALJ assigned little weight to the November 4, 2015 opinion from Dr. Kay, in which Dr. Kay listed four restrictions that Plaintiff suggested for himself (Tr. 21, 417) . As the ALJ noted, this was not a medical opinion, but rather a report of Plaintiff's own subjective statements (Tr. 21). An individual's subjective statements are insufficient to establish disability.

8

20 C.F.R. § 404.1529(a).

Plaintiff, in reply, argues that the ALJ fails to address Dr. Kay's opinions as to Plaintiff's reasons for ceasing prescription medications (serious side-effects) and as to Plaintiff's near-syncopal episodes, which the record shows are severe enough and frequent enough to arguably preclude any gainful full-time employment. Accordingly, the court will remand this case for a closer look at Dr. Kay's opinions, as well as any other opinion supporting Dr. Kay's opinion.

Next, Plaintiff argues that the ALJ erred in failing to build a logical bridge from the evidence to the conclusions about Plaintiff's ejection fraction. The crux of Plaintiff's argument appears to be that in September of 2010 Plaintiff's ejection fraction was 45%, and he was deemed disabled. In March of 2014, Plaintiff's ejection fraction was 50%, and in January 2015 his ejection fraction was 49%. Plaintiff claims that a normal ejection fraction is greater than or equal to 55 percent (the Commissioner states that 50 percent is at the lower limits of normal), and that Plaintiff has always had a low ejection fraction. Plaintiff concludes that this is evidence that the ALJ failed to build a logical bridge from the evidence to the conclusion. Although the Plaintiff's argument is far from clear, the court will give him the benefit of the doubt in this instance, since the case is being remanded anyway, and order the ALJ on remand to provide a coherent discussion of Plaintiff's ejection fraction at various points in time, and how that relates (or doesn't relate) to the conclusion that Plaintiff is (or is not) disabled.

Next, Plaintiff argues that the ALJ failed to properly consider the diagnostic imaging studies performed before and after Plaintiff's point of comparison, November 15, 2010. Plaintiff primarily objects to the use of an echocardiogram performed on March 25, 2014, which revealed normal chamber dimension; ejection fraction of 50%, normal valve morphology of mitral and

9

aortic valve; normal functioning of the prosthetic pulmonary valve; and, mild tricuspid regurgitation fo no hemodynamic significance.  Plaintiff believes that the ALJ gave too much weight to this echocardiogram,.  Plaintiff claims that the echocardiogram doesn't address the right versus left ejection fraction, and thus misses a core detail of Plaintiff's heart problems.  The Commissioner's response to Plaintiff's argument is hazy, at best.  Thus, the court will order a remand on this issue also.

      Lastly, Plaintiff argues that the ALJ erred by over-emphasizing Plaintiff's daily activities.  The Commissioner notes that Plaintiff helps care for his five young children, cooks meals, does some housework, and goes hunting.  The Commissioner claims, without much explanation, that these activities are inconsistent with the severity of impairment required to be considered disabled. This court will remand on this issue, so that the ALJ can flesh out these activities and determine how much help Plaintiff had from others, how often he was able to perform these activities, how often did Plaintiff have to sit down and rest, and how strenuous were these activities as performed by Plaintiff.  Plaintiff states that he helped with cutting wood, but that he operated the automatic log splitter while his family lifted the logs and stacked them.  Likewise, there is no evidence that hunting is a strenuous activity, as oftentimes it consists of sitting quietly in a hidden spot and waiting for game to approach close enough to shoot.  Therefore, remand is appropriate so that these issues may be discussed more fully.

## Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby REMANDED for further proceedings consistent with this Opinion.

Entered: May 3, 2018.

s/ William C. Lee
William C. Lee, Judge
United States District Court
